UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.  5:17-1138-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| JOSEPH ROGER MOULTRIE | ) | |
| _____ | ) | |

This matter is before the court upon the defendant's motions, through counsel, for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. §3582(c)(1)(A) (ECF Nos. 225, 236).   The defendant claims that he has a variety of very serious ailments that have become significantly worse as he was incarcerated during COVID. He contends that these extraordinary and compelling reasons need not have been unforeseen at the time of his sentencing pursuant to U.S.S.G. §1B1.13(e).  Alternatively, the defendant moves for home confinement or GPS monitoring.

The government has responded in opposition, arguing, among other things, that the defendant has not shown any extraordinary and compelling reasons for a reduction or release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release.  The defendant did not reply to the government's response and this matter is now ripe for review.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties.  For the reasons which follow, the defendant's motion is denied.

1

## PROCEDURAL HISTORY

*The Criminal Offenses and Sentencing*

In 2005, the defendant pleaded guilty to possession with intent to distribute 50 grams or more of cocaine base and was sentenced by the Honorable Judge Margaret B. Seymour to 262 months incarceration. *See United States v. Joe Roger Moultrie*, CR No. 5:04-885-MBS. On a subsequent Rule 35(b) motion of the government in 2010, the court reduced the defendant's sentence to 120 months followed by 10 years of supervised release. The defendant was released to supervision on this charge in September 2013. After serving approximately 4 years of his 10 year term of supervision, the defendant's motion for early termination was granted and his supervision was terminated on July 27, 2017.

In the current criminal case, the defendant was indicted in December 2017. One count of his conviction occurred during the time of his earlier supervision in 2015 and the second count occurred one month after his supervision was terminated in 2017. The defendant was 63 and 65 years of age, respectively, when he committed these offenses. He is now 71 and has served his current sentence since April 15, 2020.

At trial, the defendant was convicted by a jury of two counts of possession with intent to distribute and distribution of a quantity of crack cocaine. Based upon the defendant's prior criminal history (and not the amount of drugs he distributed) he was determined to be a career offender with a corresponding guideline range of 262 to 327 months.

At his sentencing on December 17, 2019, Judge Seymour, without opposition from the government, granted a significant variance and sentenced the defendant to 120 months

after consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a). The basis for a substantial reduction in the defendant's term of incarceration was the defendant's advanced age and numerous medical ailments experienced by the defendant at that time. Judge Seymour also recommended that the defendant be housed at a medical facility during his incarceration.

The defendant appealed his conviction which the Fourth Circuit Court of Appeals denied in its mandate of June 21, 2021 (ECF No. 206).

The government indicates in its brief that the BOP has not considered the defendant for home confinement.

The defendant is scheduled to be released on October 11, 2027. The only disciplinary infraction since September 2022 was a 2012 infraction for possessing a hazardous tool. The information provided by the government (ECF No. 222) dates back to 1996. The defendant has had numerous work assignments on camp grounds maintenance, camp garage detail, food service, admissions and orientation, and has served as an orderly. He has taken more than 25 vocational and educational courses while at the BOP. He has also completed the non-residential Drug Abuse Program at the Federal Prison Camp.

## STANDARD OF REVIEW

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824 (2010). However, the commonly termed "compassionate release" provision of § 3582(c)(1)(A) provides a statutory vehicle to modify a defendant's sentence. Under this statute, a district

court may reduce a criminal defendant's sentence if the court finds extraordinary and compelling reasons that warrant such a reduction after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, as well as "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Prior to the First Step Act of 2018, courts could only consider compassionate release upon motion of the Bureau of Prisons (BOP). *See United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020). Today, however, § 3582(c)(1)(A) allows a defendant to file his own motion for compassionate release directly with the federal court so long as he first fully exhausts all administrative remedies.

Although Congress did not define "extraordinary and compelling" reasons in § 3582(c)(1)(A), the Sentencing Commission addressed the issue in a Policy Statement—United States Sentencing Guideline (U.S.S.G.) § 1B1.13—which provided the BOP with several categories of "extraordinary and compelling reasons" to consider. *McCoy*, 981 F.3d at 276.

For years following the passage of the First Step Act in 2018, the Sentencing Commission did not update § 1B1.13 to account for motions filed directly by defendants, meaning that the policy did not bind the courts when presented with a defendant's motion for compassionate release. *Id*. at 281–82, 284. A court, therefore, remained "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *Id*. at 284 (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)) (alteration and emphasis in original).

However, on November 1, 2023, the Sentencing Commission, via Amendment 814, amended Guideline §1B1.13(b)(1)–(6) to address compassionate release motions brought directly by a defendant and to clarify and expand the list of what may qualify as an extraordinary and compelling reason to support a sentence reduction. The qualification list falls into several categories: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant was the victim of certain abuse while in custody; (5) any other circumstances or combination of circumstances that, when considered by themselves or together with any of the preceding categories, are similar in gravity; and (6) an unusually long sentence if the defendant meets certain conditions. The policy statement also recognizes the possibility that the BOP could identify other grounds that amount to extraordinary and compelling reasons.

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. First, the court determines whether extraordinary and compelling reasons support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with the applicable policy statements issued by the Sentencing Commission. Finally, if the court finds that an extraordinary and compelling reason warrants relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021); *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021).

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

Finally, the defendant bears the burden to establish that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

### *Exhaustion of Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on his behalf. The defendant may file a motion with the court: (1) after fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021), 18 U.S.C. § 3582(c)(1)(A).

The defendant's request for compassionate release was denied by the Warden on August 21, 2023, thus this court is satisfied that the defendant has exhausted his remedies and will proceed to review the motions on the merits.

## ANALYSIS

### *The Defendant's Medical Circumstances*

The defendant relies on U.S.S.G. § 1B1.13(B) and (C) to support his motion for compassionate release based on his medical conditions. The record in this case reveals a variety of illnesses that were addressed by Judge Seymour in her decision to sentence the defendant to 120 months, down from the 262 to 327 month guideline range in his present

case.  Today, those medical conditions include: hospitalization for double pneumonia, perforated corneal ulcer in his right eye, rheumatoid arthritis, post operative Stage II prostate cancer, hip replacement, COPD, and COVID for which he has recovered.  The defendant claims that his suffering from serious physical and medical conditions rises to the level of extraordinary and compelling reasons that reduce his ability to care for himself in prison.

*Government's Response in Opposition*

In its memorandum in opposition, the government first suggests that these medical conditions were present prior to the defendant being incarcerated in this case and also during the time of the commission of the offenses.  Notably, the government advises that the defendant filed a petition for commutation of his sentence with the President of the United States in March 2023.  In that petition, the defendant asserts that "my family has a viable landscaping business that awaits me with all the proper tools, vehicles, and machinery to supplement any additional income I might need."  The government points out that while the defendant claims to be a 70 year old man with serious medical conditions that have gotten significantly worse, he plans to work in the landscaping business if released.

Moreover, the government points out that in an affidavit attached to his motion for compassionate release, the defendant states that he is confined to a wheelchair most of the day. However, the defendant has been assigned to the camp ground's maintenance team for the entire year of 2024 where he uses a broom to sweep the sidewalk and grass clear of any trash and debris.  He periodically checks his assigned area multiple times a day between the hours of 7:30 a.m. and 3:30 p.m.  The government argues that this is clearly not indicative

of a person who suffers from serious physical and medical conditions that greatly reduce his ability to care for himself in prison, nor a person confined to a wheelchair most of the day.

With regard to the § 3553(a) factors, the government notes that while on supervision from his first federal drug conviction, he continued in his criminal ways and is a career offender. And, even after being given a second chance when he was released early from supervision in his 2005 federal criminal case, he was caught and convicted again of distributing crack cocaine. At his sentencing in this case, the court granted a variance down to 120 months based on his age and medical conditions. He now seeks compassionate release from incarceration based on those same factors.

One of the salient factors this court is required to consider in determining eligibility for compassionate release is the need to promote respect for the law. In this court's view, it would not promote respect for the law to allow someone who was at an advanced age with numerous medical ailments to commit a crime, use his age and medical infirmities as a basis for a substantial (greater than 50%) reduction is his sentencing Guideline range, and then return to this court seeking yet another reduction based upon his age and infirmities. In other words, an individual who is at an advanced age (here 71) with medical problems, who is a repeat offender and career criminal, and who has benefitted greatly at his initial sentencing, does not deserve a second round of reduction based upon the same basic facts relied upon by Judge Seymour in his original sentencing. In short, therefore, the court determines that the defendant has not shown an extraordinary and compelling reason for his immediate release.

Moreover, even if the defendant had made such a showing, this court's careful evaluation of the § 3553(a) factors would compel a denial of the motion. In his present criminal case, the defendant was found guilty via a jury trial on two counts of possession with intent to distribute a quantity of cocaine and crack cocaine. During a traffic stop, law enforcement found the defendant in possession of 1.3 grams of crack cocaine and .5 grams of cocaine powder. A later traffic stop found the defendant in possession of 1.97 grams of crack cocaine and 1.06 grams of powder cocaine. In total, the defendant was held accountable for the possession with intent to distribute 11.89 kilograms of converted drug weight for purposes of establishing the base offense level.

In the Information pursuant to 21 U.S.C. § 851 filed by the government in this case, the defendant was notified that he faced enhanced penalties under 21 U.S.C. § 841 for the following prior convictions: (1) Possession of marijuana, arrest date 07/30/1976, sentence date 02/03/1977; (2) Possession of marijuana, arrest date 08/17/1984, sentence date 05/07/1985; (3) Possession of cocaine, arrest date 08/17/1984, sentence date 05/07/1985; (4) Possession of cocaine in excess of 10 grams, arrest date 03/04/1985, sentence date 04/15/1985; (5) Possession with the intent to distribute cocaine, arrest date 10/31/1987, sentence date 04/07/1988; (6) Possession of marijuana, arrest date 10/31/1987, sentence date 04/07/1988; (7) Possession with the intent to sell cocaine, arrest date 08/05/1993, sentence date 10/28/1994; (8) Distribution of cocaine, arrest date 10/06/1995, sentence date 05/16/1996; and (9) Possession with the intent to distribute and did distribute 50 grams or more of cocaine base, arrest date 09/23/2004, sentence date 07/20/2005.

The defendant was determined to be a career offender and his prior offenses are set out in detail in the Presentence Report (PSR) (ECF No. 171).

## CONCLUSION

This court has carefully considered the totality of the record before it and conducted an individualized analysis of the facts and issues raised by the parties under the applicable laws and amendments to the Guidelines.

In summary, the court does not find an extraordinary and compelling reason for consideration of compassionate release on defendant's claims relating to his medical conditions. For the reasons stated herein, the defendant's motions for compassionate release (ECF Nos. 225, 236) are respectfully denied.

With regard to the defendant's other motions or issues raised in his pleadings, the court finds as follows.

*Motion to Alter Judgment*

Before this case was reassigned from Judge Seymour to the undersigned, the defendant filed a *pro se* motion to alter his judgment (ECF No. 216). The defendant states that he is grateful for the sentence he received, but asks the court to give him credit for more than two years on his sentence for the time he was on bond on strict home confinement awaiting his reporting date to the Bureau of Prisons. He also complains that the BOP staff was behind in getting his rheumatoid arthritis infusions twice a year.

As an initial matter, the defendant is not entitled to receive credit for the time he spent on home detention as a condition of his pretrial bond. Here, the Magistrate Judge released

the defendant on a $75,000 bond and placed the defendant on home incarceration 24 hours per day as a condition of his pretrial release. He was allowed to assist his mother in law and attend church on Sundays.

This is not official detention under 18 U.S.C. § 3585(b) because the defendant was not detained in a penal or correctional facility, but was instead confined to his home. Thus, this court cannot allow him credit for time served prior to his sentence. The motion is denied.

*Request for Modification of Presentence Report*

In a letter to the court dated March 28, 2023, the defendant requests modification of his PSR to remove a conviction for simple assault, with an unknown conviction, for which he was fined $57. The defendant contends that the BOP is using this conviction to classify him as a violent offender and exclude him from a program for elderly offenders who have served 66% of their sentence. The defendant provides a copy of a letter from the Orangeburg Magistrate Derrick Dash stating that they have no record of this conviction.

This court has no authority to alter the PSR or persuade the BOP to alter his classification at the BOP. This request is denied.

*Reduction of Status Points Under Amendment 821*

Although not raised by the defendant in his pleadings, the court will address this issue because the U.S. Probation Office advised the court that the defendant was one of many defendants in this District who received status points and who could potentially be affected by Amendment 821.

Retroactive U.S. Sentencing Guideline § 4A1.1(e), took effect November 1, 2023. Part A of the Amendment (§ 4A1.1(c)) addresses "Status Points," decreasing them by 1 point for individuals with 7 or more criminal history points and eliminating status points for those with 6 or fewer criminal history points. Subpart 1 of Part B creates a new § 4C1.1 guideline that provides a decrease of 2 offense levels for "Zero-Point Offenders" (those with no criminal history points) whose offense did not involve specified aggravating factors.

According to the Sentence Reduction Report (SRR) prepared by the U.S. Probation Office on April 11, 2024 (ECF No. 238), the defendant would receive no criminal status points today instead of the 2 he did receive at sentencing which would reduce his total criminal history points from 8 to 6. However, due to the defendant's career offender status, his criminal history category would remain VI and his reduced Guideline range would be 262 to 327 months which is significantly higher than the 120 month sentence he is now serving. In addition, the variance granted at sentencing by Judge Seymour cannot be applied to a proceeding under 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1(b)(2). Thus, Amendment 821 is not applicable to the defendant because it does not have the effect of reducing his Guideline sentence.

IT IS SO ORDERED.

June 4, 2024                                            Joseph F. Anderson, Jr.
Columbia, South Carolina                                United States District Judge